Darnell PARKER, Plaintiff,

v.

Oscar SHADE, et al., Defendants.

No. 92–C–1199.

United States District Court,
E.D. Wisconsin.

Dec. 22, 1994.

Darnell Parker, pro se.

James E. Doyle, Jr., Wisconsin Dept. of Justice, Office of the Atty. Gen., Madison, WI and Richard Victor, Asst. Atty. Gen., Wisconsin Dept. of Justice, Milwaukee, WI, for defendants.

### DECISION AND ORDER

RANDA, District Judge.

This case comes before the Court on defendant's motion for summary judgment. Based upon the reasoning, factual submissions, and authorities submitted by the defendants, adopted and incorporated here by this reference, the motion is granted. To summarize those submissions the plaintiff, who was incarcerated at the Racine Correctional Institution ("RCI") at the time of filing, claims that he was kept in program segregation status beyond the end of the program segregation period imposed in prison disciplinary proceedings brought against him. Specifically, he claims he spent thirteen (13) extra days in segregation at the Kenosha County Jail prior to his transfer to Racine, and twelve (12) days of extra program segregation at RCI. RCI officials clearly cannot be responsible for any violations which occurred at the Kenosha County Jail, so that claim is easily dismissed. As for RCI, defendants have submitted affidavits showing that plaintiff was transferred to RCI on August 31, 1992 in "maximum security" status. He was also in "program segregation status". Plaintiff was placed in the Waukesha West Housing Unit because that is where segregation prisoners are kept and also because it is the only maximum security housing unit at RCI. On September 1, 1992 (the very next day), plaintiff's case was reviewed and the reviewing committee determined that he had completed his program segregation time. On September 2, 1992, plaintiff's program segregation status was removed. This affected his classification and privileges, but plaintiff could not be removed from Waukesha West at that time because

his status had not been changed from maximum to medium security. Such requires a recommendation from the Program Review Committee ("PRC"), which must be approved in Madison. The recommendation was made on September 8, 1992 and was approved on September 11, 1992, at which time plaintiff was released to the general prison population.

■ Under these facts, it is clear that no constitutional violation occurred. At worst, plaintiff's program segregation status lasted two (2) days longer than it should have. Prison authorities acted expeditiously and the two-day delay to follow the necessary internal procedures was reasonably related to the prison's compelling security interest to ensure the proper placement of prisoners. Once plaintiff was no longer in segregation status, his only remaining claim is that he should have been immediately transferred to the general population. A prisoner has no liberty interest in a specific correctional facility, or a specific wing of that facility, or a specific cell in a specific area of that facility, unless such an interest is created under state laws or regulations. *See generally, Parker v. Lane,* 688 F.Supp. 353, 355 (N.D.Ill.1988). The Court is not aware of any such law or regulation that would govern here. In fact, it appears the regulations required plaintiff to stay in the maximum security wing until his status was downgraded to medium. Even if plaintiff had a right to an immediate transfer, a delay of nine (9) days is de minimis and consistent with the prison's compelling security interest in the proper placement of inmates.

The Court notes that plaintiff has not responded to the defendants' motion. Under the local rules, this alone justifies the Court's adoption of defendants' factual submissions as true. Local Rule § 6.05. However, plaintiff's default may be due to a lack of service. Despite defendants' good faith efforts, plaintiff apparently has not been served with the motion papers because he has been released from RCI and has left no forwarding address. This does not dissuade the Court from granting summary judgment. Plaintiff brought this case. The Court allowed plaintiff to proceed with the case at taxpayer expense. As the party seeking relief, it was incumbent upon the plaintiff to notify the Court and opposing counsel of his change of residence. His failure to do so has put the Court and the defendants in the difficult position of not being able to notify the plaintiff of developments or filings affecting his case. Indeed, the Court cannot even mail the plaintiff a notice directing him to take action in the case or face dismissal for failure to prosecute. Such is unacceptable. It provides a basis for dismissal on summary judgment grounds and, alternatively, for failure to prosecute, and the Court so orders.

**NOW THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Defendants' motion for summary judgment is granted, as is the Court's sua sponte motion to dismiss for failure to prosecute, and the case is dismissed, on its merits, and with prejudice.

**SO ORDERED.**